For the next case, Clay Chheng V. Attorney General. Mr. Bardetti knows how to draw a crown. This is very common, this CMV. How does that give you informed consent when the doctor is going to tell you it's so common it's pervasive? It's not common. The symptoms are not common, number one. Number two, as a kidney transplant patient, with an immunosuppressed system as every transplant patient gets, that presents a serious risk. Everybody who has a liver transplant is under the same circumstances. Would you agree with that? Immunosuppressant. Immunosuppressant. That same circumstance is present in every case. That's like saying when we go on an airplane nowadays, there's always a risk that a terrorist with a bomb is on the plane. No, you don't. No, you don't, but I want to be told if there is a terrorist with a bomb on the plane, I'm going to be getting on. So you're saying that because the donor had CMV, it followed up to the fact that your client was going to reject the kidney and suffer? Well, no. In this particular case, my client wanted the choice to choose his wife's kidney, which was evaluated by the doctors. He didn't know he had the choice of choosing his wife's kidney? He didn't know he had the choice of choosing between a CMV-infected kidney  But we don't know, sitting here right now, I have no idea whether putting a kidney from a donor who's CMV-positive is likely, probably, possibly going to result in a recipient contracting CMV. What's the answer to that? I don't know the answer to that. Well, only as the facts present in this case. What does the medical science say? When a donor who's CMV-positive transfers her kidney to a recipient, what is the likelihood that that recipient is going to manifest the symptomology and get sick and suffer the way your client has? Only judging from one of the defendant's letters in this case, where they say it is understandable or expected that since he has CMV-infected kidney that he contracted that virus. Okay. Isn't it common sense that the doctors also describe that type of virus as a potentially serious virus to a kidney transplant patient? Is there causation because the donor has CMV? When a transplant recipient has a compromised immune system, they're more susceptible to all kinds of viruses, influenza, the common cold, etc., etc., right? That may occur independent of whether the donor has influenza at the time of the transplant or has a history of a lot of influenza, etc. What's the causation? That's correct. In this case, the bomb was on the plane. But we don't know it's a bomb. Well, we know it's a bomb because the doctors say it's a bomb and they say it's a serious potential risk to this patient because they say that they discuss that serious risk. But that's common. It's not common to have a bomb on a plane. The CMV being in most patients, in fact, the vast majority, is common. What is not common is to have a bomb on a plane. I see that as a false analogy. Let me ask another question, too. I find an affidavit of merit is the legislative choice in New Jersey, and I can go along with that. The language of the specialty I find perhaps a little more loose, but then I turn a little more loose in that you can see where an infectious disease specialist could opine on the issue of informed consent here by explaining the dangers of a CMV virus and how it would affect someone receiving a kidney transplant. I find Dr. Rayburg's affidavit very sketchy, and it doesn't persuade me at all that he is a type of doctor who, despite not being a specialist in kidney transplants, could explain the significance in this case of the lack of informed consent by the fact that the kidney donor was CMV positive. I find it very sketchy and conclusory. Judge, I think that lawyers have a compelling urge to move toward expert witnesses in cases, but I think the district court judge misunderstood what the plaintiff will be required to introduce in this case when he said in his opinion that the plaintiff would have to introduce, and I'll get the page from that opinion in a second, but the purpose of the affidavit of merit statute is to require an opinion on the ultimate issue, that is, that this particular defendant breached a professional standard of care. Okay, and Dr. Rayburg is on the ultimate issue, but without any explanation, particularly without any explanation that can persuade me that he is in the same position as a surgeon doing kidney transplants to discuss informed consent and to discuss the risks because he just simply says it's a risk. Right, but what he says is he thinks... I don't think it's a dilemma arguing Dr. Rayburg's affidavit applies to this case. Absolutely. You're on really poor footing, it seems to me, with Rayburg. Your better argument, I think, is we don't need one. Absolutely, and I admit it in the papers that I tried to get that affidavit to be cautious. But then how do you deal with our opinion in Chamberlain? Because in Chamberlain, we held that an affidavit of merit, this particular statute in New Jersey, applies to patients' medical malpractice claims based on lack of informed consent. We need to follow the precedents of this court. How do you convince us not to follow what I just read? Because we can't follow things blindly with black-letter law in cases like this because the Supreme Court of New Jersey has also said and the District Court recognized what the standard is for informed consent and it's relating to a reasonably prudent patient and that's where the confusion has come. So there might be cases where the theory of informed consent requires a medical opinion on the ultimate issue. But when the District Court in this case says, for instance, on page 8 of its opinion which is appendix A8, it says expert medical testimony would be required for example to explain what the CMV and HHVX viruses are. The plaintiffs may decide to do that. I think that I would do that in this case. I would introduce an expert and I would say what are these viruses? Explain to the jury what it is. But that wouldn't require any opinion about the defendant's liability. Explain CMV viruses. The jury understands what that is. Then he says that... That's I think an interesting argument but I think that's a secondary argument. Let's look if I can focus your attention on the threshold argument which is this statute says you need an affidavit of merit if it's a malpractice case or a negligence case, correct? To prove a deviation from the professional standard of care. That's where I have to say... This is not a deviation from a standard of care. Because the cases that help you, Hubbard and Palenque that's the common knowledge exception to the affidavit of merit. You don't need a doctor to say that it's malpractice to pull out the wrong tooth and you don't need a doctor to say that it's wrong to do an operation for an ectopic pregnancy if someone is malpregnant. And I'm arguing in this case that you don't need a doctor to say that when you've established by their own testimony that CMV presents a serious risk to a kidney transplant patient that putting in a kidney that has infected the CMV virus without telling the patient what options they have is something that a jury can say. He told the patient about the risks of CMV. That's clear from the record. But because things went bad, your client says well, in hindsight I would have asked more questions or I would have insisted that my wife's kidney be used. They made a strategic decision that I don't blame them for not to use the wife's kidney. They thought maybe a child might need the wife's kidney. But they weren't given critical information that has nothing to do with a professional standard. That critical information is what's the likelihood that he would have the symptoms that he ultimately suffered from by getting a kidney from a CMV positive donor. And sitting here today, I still don't know the answer to that question that I wish I did. I can answer that for you. That's a right he has. And the right he lost is the right to ask the question of one of the surgeons. What is the likelihood if I take the kidney from that infected donor that I'm going to get CMV? He never had that opportunity. But being so common, he didn't have much of a choice. He did have a choice in this case to accept his wife's kidney. What if he didn't have a wife who was CMV free? Is this an informed consent case? Yes. He has no choice. Now he doesn't have a wife. Then you get into whether this case would have been brought. I can't tell you that. In other words, it wouldn't be an informed consent case. Well, I do recognize that informed consent case, to practically bring the case, you have to have an option. It doesn't make sense. And I think some of the medical community addresses the issue. Well, that's not true. Because changing from CMV to HIV, I mean, if most people who get a kidney from a donor who's HIV positive, in fact, contract HIV, surely that's something that the recipient should be told before you agree to proceed further with that transplant. I have no idea whether 1% of CMV donor kidneys result in the kind of symptomology or suffering that your client has endured. I have no idea. You don't know? We need a doctor. We need medical literature to say that in 60% of the cases, or in 12% of the cases where a CMV positive donor donates a kidney, that recipient contracts CMV. I think that my client should have known that. I think he should have a right to answer that question. And I think that relates to causation, Judge, in all due respect. I don't think it relates to the lack of informed consent. The reason I say this case is very similar to taking out the wrong bone or leaving the industry. Your client should have been told that if it's statistically significant. If a CMV positive donor is more akin to an HIV positive donor, let's say, and I'm not even sure that's apt, but if it's more akin to something that automatically transmits a disease to the recipient, as opposed to something like the donor having red hair or blue eyes, or propensity for type 2 diabetes, or there are hundreds of thousands of potential conditions this donor can have, right? So what we really need to know, and I still don't know, is CMV positive donor like telling the patient that your donor has red hair, blue eyes, propensity, a family history of heart disease, etc., etc., or is it more like something that typically causes major trouble in the recipient? Don't we need to know that? I don't think that's the type of information that is required as a precondition to sue by an affidavit of merit, because an affidavit of merit says that you must introduce a primary opinion on the deviation from standard. And now you're talking about what is the exact risk in a medical community? And that goes to the higher standard of care in transplant surgery. Isn't the standard of care in transplant surgery, you don't take a diseased organ from one person and put it into the other one, and it's going to cause harm to the recipient?  Well, it may be, but in this case, that standard of care is not determined in New Jersey by expert medical opinion. It's determined by a recently proved patient as determined by the jury. And trying to interject in this case, the arguments of standard of care is in contradiction to the standard that applies in this type of case, which is a jury determination of whether a reasonable patient would have wanted to know that. Now, does he need to know what the chances of catching the virus are? He might. And that can be introduced as evidence in the case, but not opinion. I have to catch you off guard. We've got to get over to the other side, Mr. Ryan. May it please the court. I am Daniel Ryan for Dr. Doria, Dr. Burke, and Thomas Jefferson University Hospital. Your Honors, I think that the questions that have been asked over the last 15 minutes or so really show why an expert is needed in informed consent cases such as this. And when an expert is needed in an informed consent case such as this, then an affidavit of merit is necessary under the New Jersey statute. In this case, there's no question that the issues that have to be addressed in terms of the affidavit of merit statute deal with an informed consent claim, which sounds not in battery, but really in the subset of informed consent that is medical malpractice, that is negligence. And the cases are clear, Chamberlain being the case from this court, that an informed consent case such as this requires expert testimony. It requires expert testimony because the issue isn't solely the patient's perspective, although that's important, but the plaintiff must also establish things like the existence of a risk The patient's perspective is very important, isn't it? I mean, because that's the idea of informed consent. You have to make a choice based on the information that is relevant in the medical community that you receive. You have two options, and you've got to make a decision. You can make that decision, hopefully a good decision if you have all the information that you need to make a decision or to choose an option. So I have two options. I can go with the liver that has CMV virus, or I can go with my wife, who happens to have a disease-free, virus-free liver that I can go with. Kidney. Kidney, I'm sorry. Got the wrong organ. But the point is the same. I've got to choose, and I've got a good one, or I can choose the one that's infected. Why do I need, why isn't that important information to have so I can make that choice? It's not unimportant, Your Honor, but the issue with respect to the nature of the risk is something that can only be determined by expert testimony, that can only be addressed by an expert. The question that was asked, and I think Your Honor asked it. Doesn't it fly in the face of New Jersey's reasonable patient standard, though? I don't think it does, Your Honor, because I think the very same cases that set forth that reasonable patient standard also set forth the requirement that there be expert testimony that talk about the nature of the risks, the nature of the magnitude of the risks. But the counsel argues that's a matter for proof at trial, not a gatekeeping function of this after the merit. I think that Chamberlain would say to the contrary. If nothing happens after Chamberlain, we have a slam dunk. But the problem you have, it seems to me, is that Palenque is supervening authority, Hubbard is supervening authority, Corey is supervening authority, and our job is to determine whether the statement that I challenged the public counsel with from Chamberlain remains good law in New Jersey, and whether we will now know from the three decisions I just mentioned. Your Honor, I would respectfully say that it does. I don't think it has changed the analysis as to what's required, first of all, in an informed consent case. The cases that we've talked about, Hubbard and Palenque, when they look at the negligence issues, the long tooth issues, the surgery for ectopic pregnancy on a woman who's not pregnant, I think those are just categorically different than what we're looking at here. Because here we're talking about what's necessary to determine the nature and extent of a risk to be discussed with a patient before the pretty big... But why isn't this a common knowledge case like this? Why isn't this a case where a reasonable patient would say, I have two choices, a kidney from a person who is positive for cytomegalovirus, and a person who's negative. Wouldn't the normal patient say, gee whiz, I think I'll pass on the CMV, and I'll take the healthy person? That seems self-evident, doesn't it? My response to that would be that under the cases, we have two things, two statements to make. First of all, none of them have been involved in an informed consent case. And secondly, in this particular case, because of the nature of the complexity of the virus and of the potential that can arise from the transplant that's infected by this virus, I don't know the answer as a layperson. And I think it's something that can only be commented upon by an expert in an informed... You're saying that the kidney from the CMV-positive person might be entirely statistically insignificant or immaterial. I'm saying that we don't know that. I certainly don't know that, and I think an expert is required to set that up. And I think that that's why, in this case, that in order to establish the nature of the risk, the magnitude of the risk, it cries out for expert testimony. Is there not information in the medical community about the extent of the risk of CMV? I'm certain that there is, Your Honor. Well, if there is, that's the information he's asking for. Why don't you tell me what the risks are, and then I can make an informed consent? Well, Your Honor, I think that I understand that that's what the position of the plaintiff is, but when we analyze the nature of the claim that he's brought, he's brought a claim for informed consent, he needs to have an expert support that position. He keeps setting up the hurdle, but all he's saying is, give me the information I need to make a decision. Should I go ahead with the surgery with this individual with CMV, or should I choose my wife who doesn't have the virus? Which one is that? Your Honor, there's nothing wrong with that. There's nothing wrong with that, but it gets back to the nature of the claim that's been brought. The issue is, did this patient receive appropriate informed consent? The claim by the patient is that he did not. And in order to analyze that case under the New Jersey statutes, under the New Jersey precedent, under the precedent from this Court, we look to the Affidavit of Merit statute. And in this case, there is no Affidavit of Merit which supports his claim for informed consent. And there must be. Your Honor, they say the Affidavit of Merit statute doesn't apply to all negligence or malpractice cases. It also has to go to the state of care. That's the exact language there. Your Honor, the Affidavit of Merit statute did any action for damages to personal injuries, wrongful death, or property damage resulting from an alleged act of malpractice or negligence by a licensed person. And the criticism has to be that there exists a reasonable probability that the care, skill, or knowledge exercised or exhibited in the treatment fell outside acceptable professional or occupational standards. And that's what Chamberlain requires. That's what Calabese requires. That's what Phoebus requires. But clearly, Corey says Part 3 has to go to the standard of care, right? Corey sets out three interpretive tools for the Affidavit of Merit statute. One of which is in the opponent's argument is that the standard of care is not implicated here. I think that cries out even more for the need for expert testimony. And I think that the standard of care is implicated here. And I don't think that the requirement in this case for that threshold showing of merit is met by comparing his case, comparing Mr. Mulholland's case to the Hubbard case or to the case involving the surgery on the pregnant woman. It's not the same. His informed consent claim is something that is required under New Jersey law, under the New Jersey statute. Like a gatekeeper, you're going to have to have expert testimony. If you can't produce it up front, you can't get into court. And in this case, you're going to have to have expert testimony so that if they can't produce it up front, they can't get into court. That's correct, Your Honor. But that's not necessary in every case. It's not necessary in every case, but I think that plaintiffs understood that it was in this case, Your Honor. And the plaintiffs' understanding, I know, is not controlling. But I think that the law and combined with the way that plaintiffs conducted themselves during the course of the time around the filing of the complaint... Do you think we should take note of the request that the treating physicians requested to provide the affidavit and refused to give it? Do we know that those treating physicians were advised that the wife was a match? Absolutely not. We don't know that, Your Honor. All we know is that plaintiffs tried to get an affidavit. So maybe they don't have any informed consent case that can get through the gatekeeping function if this is all about whether Mr. Mulholland was told or asked, do you want this operation despite the risk of CMV? But he may have an informed consent case that gets through the gatekeeping requirement if the question is, do you want a kidney from someone who has CMV or someone who doesn't have CMV? I think that there are two separate inquiries, Your Honor, but I think that the inquiry that we are faced with here in this case is that the information was not provided to the patient. That's the allegation. The information was not provided to the patient. Those cases, and the Hubbard case is one of them, the Darwin case is another, which talk about analyzing that as negligence, as malpractice, as something that requires expert testimony. And if it requires expert testimony, then under Chamberlain and the other cases, that Calabrese and Phoebus, then it's going to require an affidavit of merit, which is executed by a qualified physician who can say that we have a likelihood that there's a violation of the standard of care. It sounds so convincing, though, when he says that had you given me that information, the information, had you given it to me, I would have made a different choice. It sounds pretty convincing to me. I understand that, Your Honor. Why is that wrong? I won't pass judgment on it. I certainly, as Mr. McFadden argues, I would have made, the patient would have made, Mr. Mulholland would have made a different decision. Had you simply given me information about the CMV virus in the kidney that you were about to give me? Well, from a legal perspective, what we don't know is what the nature of those risks are, what the magnitude was, what the link was between the two. But you told me before that the risks were known in the medical community. Your Honor, I correct myself if I'm wrong. No, it was certainly addressed in the medical community. I can't tell you whether it was quantifiable or quantified or anything like that. That's something I would defer to an expert on, and that is what the plaintiff is required to do in these cases. In all of these cases, in every case where the issue is here, what is the information that should be? That's what the reports that Judge Hardiman referenced before were saying, that the infections of this type in kidneys is fairly common. I understand that that's information within the medical community, and that's why they did not want to give an expert report to Mr. Mulholland. Your Honor, I think the plaintiff has characterized the reason why the reports weren't given. But the plaintiff was not limited to just seeking out the two physicians that he saw to discuss this issue, and he ended up continuing to search for someone to provide an affidavit of merit. All it means is he loses if he needs an affidavit of merit. It doesn't mean he loses if he doesn't need an affidavit of merit. What he also loses is he can't get an expert witness, and if he can't get an affidavit of merit, can he get an expert witness? This is very challenging to me, because under New Jersey law there seems to be some inherent tension between the reasonable patient standard and the professional standard of care. I understand. Let's put on our lay people's hat for a minute. Again, a donor CMV positive, a donor CMV negative. Who chooses the former? Nobody. Just obvious, right? That's the reasonable patient's choice. But standard of care, many of the experts walk into court and say, the reasonable patient may choose the CMV negative person, but surprise, surprise. The likelihood of the donor contracting a disease or suffering is identical between a donor who's CMV positive. I don't know. Isn't there a conflict between the two? How do we unravel this conflict? I think that tension is perhaps the right word, Your Honor, but I think that that's faced in virtually every informed consent case. And when we have a case such as this where the law is so clear that expert testimony is required to establish the risks and the magnitude of the risks, that therefore, regardless of the patient's perspective and the reasonable patient standard, when that element of the cause of action is there, the plaintiffs have an obligation to meet it. And the way they meet it in New Jersey is through the affidavit of merit, at least preliminarily, before they get to trial and have to prove it with expert testimony there. And that simply didn't happen here. And the defense in this case, I respectfully submit, is entitled to that threshold showing of merit, and it just wasn't present in this case and wasn't presented in this case from somebody who was qualified to do it. I understand Your Honor's point with respect to the tension, but I think that the elements of the cause of action, when considered in their entirety, require the plaintiff to establish by expert testimony up front through an affidavit of merit that they can make that proof or they can at least have a pretension to make that proof. Which element requires them to bring in an expert in this case? The requirement of expert testimony to establish the knowledge of the risk in the community, the magnitude of the risk, the factors that are set forth in Phoebus and Calabresi and even in Chamber. The nature of the risk itself is something that requires expert testimony, and that is what has to happen from a qualified expert through the affidavit of merit in a case such as this. So, Your Honor, would the elements of the cause of action require that expert testimony? And just as Chamberlain says, the affidavit of merit is required to be signed by a qualified expert who can address those issues. And I would respectfully submit that that simply didn't happen in this case. And for that reason, I request that the judgment of the court below be affirmed. Thank you. Mr. Ryan, thank you very much. Mr. McFadden? I can't help thinking, Mr. McFadden, that it would seem so fairly straightforward to get an affidavit of merit in this case. A statement from a doctor to say, yeah, you're going to get a kidney from someone who has CMV and there is a risk of infection. The problem with that, Judge, is what do you tell the doctor he has to say in that affidavit? Because the affidavit's purpose, as specifically stated in the statute and in the legislative history, is that the affidavit has to say, in order to prevent the promotion of frivolous lawsuits, that this doctor deviated from the standard of care. And my contention is that it is impossible intellectually to make that compatible with the ultimate standard of liability in this particular case. I think it's easy if you assume the following. If you assume that bad things are more likely to happen to a recipient who gets a kidney from a CMV-positive patient, let's assume that that's a fact. When you go to the treating physician doctor, let's say Dr. Yusef, Eileen Woods, treating physician, head of the transplant department, if you accept the premise I just gave you, it is very simple for Dr. Yusef to write that giving to a recipient without disclosing the increased level of risk that would befall that recipient, as opposed to the kidney from a CMV-positive person, falls below the standard of care. That's a no-brainer. But my elements in proving an informed consent case does not require me to show that his action falls below the standard of care. It only requires me to present to that jury, and here's where the defense argument falls to the floor. It only requires me to present to that jury facts. It might be medical facts, but they're facts that the jury uses to decide, you know what, I would want to know that and a reasonable patient would want to know that. But you need an expert for that. I'm interested in Judge Rothschild. Are you arguing that you don't need a doctor to get through the gate, but you do need a doctor at trial? I'm arguing two things. Number one, in this particular case, I can present it and satisfy the elements of my cause without a doctor. To this extent, I have admissions by defendants against their interests, which, for instance, say that CMV presents a serious potential risk to you, the donee in this case. Does this disclose your client before the acquisition? It does not. Sure it does. There's a letter from the transplant surgeon to the referring physician that said, you know, thank you, I met Mr. Mulhall, a nice guy, I told him about all the bad things that can happen, and the letter is CMV. Well, but in this case, I think the court has to accept that the plaintiff's facts, number one, which he did tell us that. Number two, I get back to my plain theory. That's different. We're arguing that that is not an informed consent, because you didn't tell us that this kidney was carrying a bomb. You said, well, I might get at risk of catching a lot of different viruses. A couple of them might be serious. You didn't tell me one of those serious viruses is being carried by the kidney you're putting in me. You can actually present this case to a jury without any medical evidence? I think I can't, no. I think I can introduce the statements against the interests of the defendants or put this defendant on the stand who said that it presents a serious risk and haven't acknowledged that. I want to point out one other issue that we covered on the direct argument, and that is, what is the percentage of the patient catching CMV from a CMV virus kidney versus a clean kidney? First, I want to suggest that a jury has to decide that, not a doctor. A jury can't decide that without medical evidence. I'm not going to allow you to stand up in front of that jury and say, ladies and gentlemen, this is an easy case. My client has this dreadful disease, and he got it because he got a kidney from a person who has the same dreadful disease. He could have gotten a kidney from a person who doesn't have the dreadful disease. I rest my case. Whether that appeals to the layman's notion of common sense, of course. The problem we have is we don't know anything about the causation of the donor's dreadful disease and the recipient's dreadful disease and whether there was any relationship between the two or whether that kidney transplant recipient was just as likely to get an immunity problem from a different kidney. Well, one evidence that we use to do that is on appendix 154. It's a letter from Dr. Franzos. And he meets the plaintiff in a follow-up visit. And he says in the first paragraph, he, referring to the patient, states that he had been in the hospital for nausea and vomiting and he had lower levels of CMV virus. You subsequently placed him back on dialysis. It is noted that he had a CMV positive donor and he himself was CMV negative. So this is reasonable. And you interpret that to mean what you said yourself would be self-evident. But that could be a coincidence. You know, we don't know about causation. It doesn't tell us anything about causation. I guess what's frustrating about this case is the causation issue. So many questions and there's no questions or very few answers. And I really think you can just stand in front of a jury and say, look at the fact that the donor had it, my client has it. I would. Judge, I think I could satisfy the elements of the cause. What I would do in this case is I would introduce a doctor to describe, maybe an infectious disease doctor, describe what CMV virus is. I would introduce a doctor to say, as I think the defendant's records all confirm, that a kidney transplant patient after the kidney transplant is immunosuppressed and that this virus, which the defendants admit in their correspondence, presents a serious risk. Now, I don't think you have to go beyond that to satisfy and meet the standard of give the jury enough information for them to determine that a reasonable patient would want to know that a virus that presents a serious risk to you is being carried by the donor and you don't have it. I don't think I need a medical doctor to say, yes, that is a breach of the doctor's standard of care if he doesn't tell you that. But you did not bring suit claiming that it was a breach of the standard of care to give a CMV positive kidney. I did not. I did not because... And I decided that because the doctors... Right, because that's not necessarily a breach of the standard of care. It happens all the time. It does happen all the time. In this case, the doctors have made a mistake because there is no evidence the defendant can produce in writing that confirms that they told this patient that your donor had CMV virus. And so to that extent, I'm not alleging any breach of standard of care. It's a common knowledge case. And the word self-evident comes to mind. We're not going to pick that virus-diseased kidney over a clean kidney. If the doctor tells us there's a 1%, a 2%, or if the doctor tells you, I don't know, you're not going to pick that kidney or if it's a 1% or a 2% chance and you want to preserve your wife's kidneys for a kid someday, I don't know that you can say that the reasonable patient wouldn't pick the 1%. I understand that, Judge, but my point is the standard here goes to the patient and I think most people are not... They don't have a right to... They don't have to believe and accept that 2%. It is not just a subjective standard. There's got to be a reasonableness to it. Yes, but it's only determined by what a jury perceives that patient would want to know. And the jury can say, I don't care, doctor, if you say it's only a 2% chance because common sense tells me, common knowledge tells me if you put that virus-affected kidney in me, then there's a better chance I'm going to get the disease. And they're going to have facts at the trial that convinces them that. But they're the ones that make that decision. I don't need to introduce a doctor, I contend, to say that this doctor should have done that, but he didn't. I just need to introduce the underlying facts about the virus. Mr. McLeod, we have to finish. Thank you. Thank you very much. This was really a very well-argued case. I take the case under advisement. Thank you. Thank you, Mr. Wright. All rise. The court is adjourned until tomorrow. Please remain in line until 1030 a.m. Thank you.